VINCENTA DZIEKIEWICZ vs. JAMES T. CAFFREY.

First Judicial District, Hartford, October Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

The plaintiff's husband, with her knowledge and consent, conveyed his farm to S, and also transferred to him by bill of sale all the live stock thereon, some of which she owned; and thereafter he operated the farm in partnership with S and they became indebted to the defendant to whom S transferred the live stock in settlement of his claim. The plaintiff then brought this action asserting title to some of the cattle and claiming damages for conversion. *Held* that the trial court erred in granting judgment for the plaintiff, since her conduct in consenting to her husband's transfer of the cattle to S had divested her of title as effectually as though she had joined in executing the bill of sale.

Submitted on briefs October 8th—decided November 13th, 1924.

ACTION in the nature of trespass *de bonis*, brought to and tried by the Superior Court in Hartford County, *Maltbie, J.;* facts found and judgment rendered for the plaintiff for $713, and appeal by the defendant. *Error; judgment to be entered for defendant.*

The plaintiff is the wife of Michael Dziekiewicz, and she and her husband (married in 1909), in the year 1921 and before, were residing upon and operating a farm in the town of Rocky Hill, title to which, subject to certain incumbrances, was in him. Prior to moving to Rocky Hill the plaintiff had owned and operated, with her own funds and on her own account, a farm in Cromwell, while her husband was employed elsewhere; and she had then, as such owner and operator of that farm, traded with the defendant. Prior to March 11th, 1921, Wladyslaw Stanlovich and his wife, Nicolina, came to live with Michael and the plaintiff on the farm in Rocky Hill, and had advanced considerable sums of money to Michael to assist in the conduct of the farm.

Shortly before that day an attachment was placed upon some of the stock upon the farm, and Michael applied to Stanlovich to advance him money to secure its release, which the latter was ready to do, and to advance further sums to discharge debts Michael had incurred on account of the farm, provided he could be secured in some way.

Michael and the Stanloviches met once or twice at a lawyer's office in the attempt to arrive at some definite agreement in the matter, but without success. Such agreement was to include the conveyance of the farm to the Stanloviches and the personal property thereon. In the effort to further their desire to make some arrangement, the lawyer, who acted for all parties, drew up a tentative agreement, wherein Dziekiewicz agreed to assist and work on the farm, and to assume and pay one half of all the incumbrances on the farm, except a mortgage to one Walna, which the Stanloviches were to assume only to the extent of $500 and Michael was to pay the rest. The Stanloviches agreed to transfer back to Michael a half interest in the farm, stock and personal property thereon, when Michael had performed his part of the agreement. In case Michael made default in any of the payments, he should forfeit all claims to the premises.

This agreement was never executed by the parties, but they did arrive at an oral agreement substantially in accordance with its terms, by which Michael continued to have an interest in the farm with a right of reconveyance upon performance by him of certain obligations. Under the same date as that of the tentative agreement, March 11th, 1921, Michael gave the Stanloviches a warranty deed of the farm, subject to two certain mortgages, one of $2,500 and one of $3,000, which the grantees agreed to pay, and subject to a mortgage to Walna on which the grantees assumed

only the payment of $500 and Michael agreed to pay the rest. On the same day Michael also executed and delivered to the Stanloviches a bill of sale, selling and transferring to them certain live stock specifically mentioned, "and all farming tools, live stock, hay and personal property" upon the farm conveyed. The plaintiff was fully apprized of the negotiations between Michael and the Stanloviches, and was present when the above-mentioned instruments were executed and delivered, and consented thereto.

There were on the farm at the time eight cows owned by the plaintiff which had been purchased by her with her own funds, and there were also upon it then or thereafter four calves and one bull, the offspring of these cows, likewise owned by her; and this the Stanloviches knew. After the execution and delivery of the instruments of March 11th, 1921, the Dziekiewiczs and Stanloviches continued to occupy and operate the farm together; Michael, in May following, purchased two cows for it; Michael also introduced Stanlovich to parties with whom he was trading as his "partner"; and they together bought some standing grass of one O'Connor and a bull of one Kus, for the purposes of carrying on the farm.

Previous to May 23d, 1921, Michael had carried on various transactions with the defendant and was then indebted to him in a sum of approximately $1,200; and the defendant had been pressing him for payment. On May 23d, 1921, Michael and Stanlovich came to defendant's home and Michael informed the defendant that Stanlovich had taken over the farm, and had become his partner; and thereupon Michael and Stanlovich executed a note payable to the order of the defendant for $520, payable one month after date; this amount represented the then indebtedness of Michael to defendant upon open account. On September 20th,

1921, Michael and Stanlovich gave another note payable to the order of defendant for $665, payable one month after date, and this note represented the balance of the indebtedness of Michael to the defendant existing on May 23d, 1921, as stated above. During the summer of 1921 there were various sales made by the defendant to Michael and Stanlovich, so that on November 22d, 1921, including the two notes and renewals of the same hereinabove referred to, they were indebted to the defendant in the sum of $1,320, which sum was agreed upon on that day by Stanlovich and the defendant to be the amount due from Michael and Stanlovich to him.

On November 22d, 1921, a mortgage on the farm was in process of foreclosure and Michael was confined in the Hartford County jail for some criminal offense, and on that day the defendant, desiring to protect himself by securing payment of the debt due him, went to the farm and, through an interpreter he took with him, procured from Stanlovich and his wife, who do not speak English, an agreement to transfer to him in satisfaction of the indebtedness agreed upon as stated above, certain personal property then on the farm. Thereupon, in pursuance of that agreement, the Stanloviches executed and delivered a receipt as follows: "Rocky Hill, Conn. November 22nd, 1921. Received from James T. Caffrey of Cromwell, Conn. Thirteen hundred and twenty Dollars ($1320) for fourteen head of Cows, Six heifers, and two Bulls, three horses, twenty pigs, eighty chickens, three wagons, one wheel harrow, one plow, one mowing machine, one cultivator, one two-horse cultivator, one tooth harrow, and the nineteen hundred and twenty one tobacco crop, and two stacks of hay, and hay in Deming Barn, near station twenty three."

At the time this instrument was executed, the cir-

cumstances of the transaction of May 23d, 1921, between Michael, Stanlovich, and the defendant, the defendant's subsequent dealings with them, and the knowledge he had of the affairs upon the farm, were such as to put him, as a reasonable man, upon notice that Michael still had an interest in the property. Almost immediately after the execution and delivery of this receipt the defendant went to the farm with a number of men employed by him and with several prospective purchasers, took possession of most of the personal property upon it, and either sold it or converted it to his own use; and among the property so sold or converted by him were the cows, calves and bull belonging to the plaintiff, as stated above. The plaintiff was present on the farm at this time, but did not claim the stock as hers or remonstrate against its sale; this was, however, a natural result to follow from the high-handed course adopted by the defendant and in view of the crowd of men who came to the farm with him; and when, at a later day, he came again to the farm to get some pigs, she did object, claiming some of them as hers, and he left those she claimed.

The memorandum of decision is made a part of this finding.

The following conclusions were reached by the court: 1. The title to the stock referred to in the finding as belonging to the plaintiff, remained at all times in her, and when the defendant took and converted them to his own use he was guilty of a conversion. 2. She retained all her right to them as against the Stanloviches, who knew the situation as to them, and is not estopped to claim that right as against the defendant, who was not misled by her conduct to his disadvantage. 3. The plaintiff is therefore entitled to recover from him for such conversion.

Upon the trial, the defendant made the following

claims: 1. The plaintiff, by reason of her conduct in assenting to the execution and delivery by her husband to Wladyslaw Stanlovich and Nicolina Stanlovich of the bill of sale of March 11th, 1921, and the warranty deed executed and delivered at the same time, and by permitting the personal property referred to in the complaint to remain in the possession of Stanlovich upon the farm to which he apparently held the title, was estopped to set up a claim of title to this personal property as against the defendant, who had dealt with Stanlovich relying on his apparent title to said property.    2. Michael Dziekiewicz having represented to the defendant that the farm upon which he found the personal property in question was being operated by him and Stanlovich as partners, the defendant was justified in acting upon the assumption that Stanlovich, as one of the partners, had authority to transfer to him any or all of the partnership assets in satisfaction of a partnership debt, and that the plaintiff by her conduct had dedicated the personal property in question to the use of the partnership.    3. Inasmuch as the plaintiff had made no objection to the defendant taking possession of the personal property and disposing of the same by sale, although she was present at the time when the property was sold and had an opportunity to object, she was estopped to claim any title to it.

Further facts appear in the opinion.

*Ernest A. Inglis*, for the appellant (defendant).

*Henry H. Hunt*, for the appellee (plaintiff).

KEELER, J.    The decision of the Superior Court is based upon the conclusion of the trial judge, above set forth, that the title to the personal property forming the subject-matter of the action remained at all times

in the plaintiff, and was not divested by her action at
the time of the making of the bill of sale of March 11th,
1921, executed by her husband.

The finding of facts does not support this conclusion.
The finding does not disclose whether the "seventeen
head of cattle" named in the bill of sale included the
eight cows, four calves and a bull, which the finding
shows to be then upon the farm, but in addition to the
specific enumeration of seventeen head of cattle, the
bill of sale also conveys "all live stock" on the farm,
which designation would include the live stock of the
plaintiff, and which clearly would have passed by the
bill of sale had they been the property of the husband.
Whether this last-named live stock in fact passed to
the vendees in the bill of sale, depends upon the atti-
tude and conduct of the plaintiff with reference to the
transaction.    The trial court finds that the plaintiff
was "fully apprized" of the negotiations between her
husband and the Stanloviches, was present when the
bill of sale was executed and delivered, and consented
thereto.   This is a finding of an ultimate fact.   No sub-
ordinate facts are found to characterize the nature and
extent of her knowledge of the purport of the instru-
ments executed on that day, or of the words used to
evidence her consent to the transaction, or whether con-
sent was properly inferred from silence.   Had either of
the parties desired a more detailed statement of facts
surrounding the negotiations and their consummation,
it could and should have formed part of the finding.
In the absence of more detailed and subordinate find-
ings, we can only form conclusions from a fair interpre-
tation of the language of the findings as it stands.   The
plaintiff was apprized of the negotiations; these nego-
tiations included the nature and content of the bill of
sale, and this included knowledge of the fact that this
instrument purported to convey all the live stock on

the farm, part of which was her individual property. It is further found that she consented thereto. That, in fairness, can only be taken to mean a full consent to the legal consequences flowing from the transaction. No other fact appears in the finding to limit such a construction, and she must therefore be held to be in the same position as if she had signed the bill of sale.

Furthermore, there was no necessity of a bill of sale either from her or from her husband to carry out the purpose and intent of the negotiations. Title would have passed by the agreement to sell followed by delivery of possession. The plaintiff and her husband and also the Stanloviches were all resident upon the farm, jointly carrying on the business connected with its use, and the latter had acquired the legal title to the farm and were in possession. The bill of sale was a convenient and proper thing to have as a matter of evidence, but by no means essential to effectuate the bargain between the parties. There is no need to deduce from the circumstances surrounding the dealings of the parties any express agency of the husband to convey the property of the wife, although the claim of defendant's counsel in that regard is not without force.

The live stock was the separate property of the plaintiff, since she was married after April 20th, 1877; she could contract with it as she chose, and could likewise be estopped with reference thereto as fully and freely as if she were sole. It hardly seems necessary to invoke the doctrine of estoppel, as claimed by the defendant's counsel, as might have been proper in case the finding had disclosed merely a silent acquiescence. Had that been the case, however, the cases cited on defendant's brief, and the decided weight of authority generally, would sustain an estoppel. The finding of the court cannot be limited to consent by silence. Other parts of the finding disclose that plaintiff was somewhat of a business wo-

man and at some time prior to the events with which the instant case is concerned had herself, during her husband's absence, conducted a farm of her own; and in the memorandum of decision, made part of the finding, the trial judge finds that plaintiff seemed to be a woman of some independence.

Plaintiff's counsel in his brief assumes and states that "no property of the plaintiff was included in the bill of sale," ignoring the fact that all of the live stock on the farm was included in its terms, and hence urges that it was not her duty to object. Had this erroneous assumption been true, she would not have been called upon to object, but in fact she not only refrained from objecting but affirmatively consented. Upon this assumption her consent was of no legal significance, however important in view of the family morale. We therefore conclude that title to plaintiff's herd passed to the Stanloviches.

Such title as the latter took, however, was subject to the other terms of the bargain in connection with the land, and by the oral contract of the parties in connection with the sale, which was substantially the same as the unexecuted draft agreement, it was provided that a half interest in the conveyed property, real and personal, should be reconveyed to Michael when he repaid certain sums to the Stanloviches. That is, the title of the latter was an absolute legal half interest in the property, and a legal title in the other half subject to the equitable interest of Michael therein. The Stanloviches conveyed most of the personal property to the defendant by the bill of sale set forth in the finding. The present action was tried at the same time as another action brought against the defendant by Michael to recover certain damages for the conversion of personal property belonging to him. The memorandum of decision as printed in the record covers both cases.

In Michael's action the court held that the Stanloviches could convey only their interest in the property to the defendant, which was an entire and absolute interest in one half, and an interest in the other half equal to the advances which Michael was bound to repay to redeem it, and that Michael's damages would be the value of the property converted less the interest of the Stanloviches therein. It was a part of Michael's case to show what the advances were, and this he failed to do; and as he failed to do it, the trial court was compelled to find for the defendant. The plaintiff in this action, however, is not entitled to rely upon these facts for a recovery upon the basis above outlined, since by the terms of the agreement the reconveyance was to be to Michael and no part of the property was to be reconveyed to her. She parted with all her interest in property she had owned when she consented to the conveyance of the same by her husband; it was her conveyance.

Had the plaintiff retained title in the live stock up to the time of the seizure of the same by defendant, we do not think as claimed by defendant, that she was estopped by her conduct at that time, and that the trial court rightly so held; but the conclusion we have arrived at obviates the necessity of any detailed examination upon this point.

There is error, the judgment should be set aside and judgment rendered for the defendant.

In this opinion the other judges concurred.